NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2475-12T4
                      A-6202-12T3

ENVIROFINANCE GROUP, LLC,

    Plaintiff-Appellant/
Cross-Respondent,

and

EARTHMARK NJ KANE MITIGATION, LLC,

    Plaintiff,

v.

ENVIRONMENTAL BARRIER COMPANY, LLC,

    Defendant-Respondent/
Cross-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **April 14, 2015** |
| **APPELLATE DIVISION** |

> Argued October 22, 2014 - Decided April 14, 2015
>
> Before Judges Lihotz, Espinosa and St. John.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-111-11.
>
> Cory Mitchell Gray argued the cause for appellant/cross-respondent (Greenberg Traurig, LLP, attorneys; Mr. Gray, Robert C. Epstein and Michael R. Glanzman, on the briefs).
>
> Paul J. Halasz (Day Pitney, LLC) and Gary H. Nunes (Womble Carlyle Sandridge & Rice, LLP) of the Virginia bar, admitted pro hac vice, argued the cause for respondent/cross-appellant (Day Pitney, LLC and Mr. Nunes,

attorneys; Mr. Halasz, Mr. Nunes and Robert G. Rose, on the briefs).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

In these appeals, calendared back-to-back and consolidated for purposes of our opinion, we examine several orders, which fix the rights of the parties. Plaintiff EnviroFinance Group, LLC (EFG) provided construction financing to plaintiff Earthmark NJ Kane Mitigation, LLC (Earthmark), the developer of an environmental mitigation project to be built on Bergen County wetlands owned by the Meadowlands Conservation Trust (MCT). The primary contractor of the project was defendant Environmental Barrier Company, LLC, d/b/a Geo-Con (Geo-Con).

When Geo-Con was not paid for its work, it filed two construction liens against Earthmark's leasehold interest in the project. Earthmark and EFG filed this action against Geo-Con, primarily to discharge the construction liens. The motion judge concluded Geo-Con's liens were properly asserted against the private leasehold interest and assets of Earthmark, not against the public realty. Geo-Con requested default and later moved for entry of final default judgment and to fix damages against Earthmark. EFG opposed the motion, asserting a final judgment against Earthmark would impair its collateral interest. Following a hearing, the judge disagreed and found EFG lacked

standing to oppose determination of claims between Geo-Con and Earthmark. A final judgment in favor of Geo-Con and against Earthmark was entered. A second order, filed over EFG's objection and without benefit of a testimonial hearing, required Earthmark's payment to Geo-Con of an award of counsel fees, costs and pre—judgment interest. The first appeal, filed by EFG, challenges these two orders (A-2475-12). This court declined to consider, but did not dismiss this appeal, pending the outcome of cross-motions for summary judgment.

Reviewing the summary judgment record, the judge upheld Geo—Con's construction liens. He also determined EFG was liable for cure payments under the terms of its agreement with Geo-Con and assertions made in a February 2011 correspondence, but was not liable for additional cost overruns outlined in a September 7, 2010 contract between Geo-Con and Earthmark, or otherwise responsible to pay claims for work performed, despite allegations of quantum meruit. The second matter regards cross-appeals by EFG and Geo-Con from the summary judgment orders (A-6202-12).

Following our review, of the arguments presented, the record on appeal and the applicable law, we affirm.

I.

MCT owns 587 acres of environmentally sensitive wetlands in the Richard P. Kane Natural Area located in Bergen County.

Earthmark was chosen as the successful bidder following the request for proposals to construct an environmental mitigation bank on MCT's land. A mitigation bank is "a wetland, stream, or other aquatic resource area that has been restored, established, enhanced, or (in certain circumstances) preserved for the purpose of providing compensation for unavoidable impacts to aquatic resources permitted under . . . state or local wetland regulation."[1] Mitigation banks employ a market-based approach to preservation, placing the implementation and success of a project on a third party in exchange for credits, which may be sold to future developers, whose ventures in the surrounding area may impact the protected environment. See 33 C.F.R. § 332.2. The proposed mitigation bank in the Richard P. Kane Natural Area was designed to allow transportation authorities, including New Jersey Transit, the Port Authority of New York/New Jersey, the New Jersey Department of Transportation and the New Jersey Turnpike Authority, to buy credits to offset wetlands disruption by prospective development in the Meadowlands region.

Effective January 22, 2009, MCT's Board of Directors entered into a ground lease with Earthmark to construct the project, at Earthmark's sole cost and expense, on a portion of

---

[1] Mitigation Banking Factsheet, United States Environmental Protection Agency, http://water.epa.gov/lawsregs/guidance/wetlands/mitbanking.cfm (last updated Oct. 5, 2012).

MCT's land. As required by the ground lease and request for proposal, Earthmark, MCT, and the various federal and state agencies comprising the Meadowlands Interagency Mitigation Council, entered into the Richard P. Kane Natural Area Mitigation Bank — Mitigation Bank Instrument (the project). Earthmark contracted with Geo-Con to be the project's primary contractor (construction contract).

The project was financed through a loan from EFG. Earthmark executed a $12 million "Secured Revolving Loan and Security Agreement" (the pledge agreement) on July 13, 2010. To secure repayment of the construction financing, Earthmark executed a "Pledge and Security Agreement" (the loan documents), granting EFG collateral security, which included 100% ownership and membership interests in Earthmark, including its leasehold and proceeds from the sale of mitigation credits generated by the project.

Geo-Con and EFG also entered into a Contractor Consent Agreement (CCA), which collaterally assigned the construction contract between Geo-Con and Earthmark to EFG. The agreement required Geo-Con to provide notice and a cure period to EFG, in the event Earthmark defaulted under the construction contract. Additionally, the CCA precluded amendment or modification of the initial Earthmark-Geo-Con construction contract, without EFG's prior written consent.

A-2475-12T4

Geo-Con commenced construction on the project in April 2010. Once EFG's financing was in place, monthly loan draw requests were submitted by Geo-Con, which certified the work covered had been completed as required by the project documents. EFG asserts problems in implementing the initial construction plan arose, creating a need for additional excavating and grading work, which caused timetable setbacks and significant cost overruns. The nature and treatment of these issues were delineated in a September 7, 2010 agreement between Earthmark and Geo-Con, amending the initial construction contract and adding more than $2 million of expense to complete the additional work. The amendment to the construction contract was not presented to or approved by EFG.

Further, EFG alleged Geo-Con and Earthmark designed a separate payment schedule for this additional work, which was sought by, and disguised in, Geo-Con's draw requests to EFG. When EFG learned of the separate agreement to address cost overruns, it declared Earthmark in default in a December 8, 2010 letter.

By January 2011, Geo-Con ceased work on the project because it was not being paid. Geo-Con notified EFG of Earthmark's failure to remit payment of its October and November invoices, and separately sent notice of its intent to stop work, unless EFG cured the default. EFG challenged the work stoppage,

6

advising Geo-Con it was willing to remit cure payments upon receipt of certain documents required under the CCA. Specifically, EFG identified Geo-Con's need to submit engineering approval, and offered to meet to discuss the matter. Geo-Con provided the engineer's certification approving the October and November invoices. Also, Geo-Con rejected EFG's position regarding the work stoppage, as well as its refusal to pay for the additional work, and accused EFG of bad faith. When EFG did not remit cure payments, Geo-Con recorded two construction liens in the Bergen County Clerk's Office against Earthmark's leasehold interest in the project, on March 28, 2011.

EFG and Earthmark initiated this action by filing a verified complaint and an order to show cause, principally seeking to discharge Geo-Con's construction liens. Further, EFG sought damages for Geo-Con's wrongful filing of the construction liens, which it argued violated the Construction Lien Law (CLL), N.J.S.A. 2A:44A-1 to -38, because the liens attempted to attach a public works project in violation of N.J.S.A. 2A:44A-15(a). The complaint also alleged breach of contract, asserting Geo-Con included sums in its liens pursuant to the concealed overrun modification agreement, which were neither approved nor due.

Geo-Con counterclaimed, alleging Earthmark and EFG breached their respective contractual obligations. Geo-Con sought

quantum meruit payment from EFG, payment on an open book account against Earthmark, an equitable lien against the assets of Earthmark and EFG, and permission to foreclose the construction liens.

On September 20, 2011, Judge Robert P. Contillo denied EFG and Earthmark's request to discharge the construction liens, finding the cited exception to the CLL inapplicable. Although the project was in the nature of a public works project as it would improve public property, the judge concluded the improvements were not "contracted for <u>and</u> awarded by a public entity," necessary elements for application of the exception. <u>N.J.S.A.</u> 2A:44A-5(b) (emphasis added). The judge determined the relationship from which the proposed liens arose between Geo-Con and Earthmark was a private one and did not involve a public entity. Therefore, the lien attached not to the public realty, but to Earthmark's private interest in the ground lease.

Partial summary judgment was later granted dismissing Geo-Con's claim for an equitable lien on mitigation credits generated from the project that were pledged by Earthmark to EFG. Subsequently, counsel for Earthmark requested to be relieved, which was granted. Earthmark did not secure substituted counsel and ceased participation in the litigation. Thereafter, Earthmark entered into a Transition Agreement giving EFG control of the project.

In June 2011, EFG assigned all its interest, including the loan and its security interest in Earthmark and the project, to Kane Mitigation, LLC (Kane). Kane was owned entirely by EFG. In February 2012, Kane became the successor bank sponsor of the project under the authorizing documents with MCT.

Without opposition, Geo-Con moved to dismiss Earthmark's complaint and requested default on its counterclaims against Earthmark. Geo-Con later moved for entry of final default judgment against Earthmark, seeking damages of $5,505,328. EFG opposed that motion and requested "a proof hearing on the validity and amount of Geo-Con's claims against Earthmark." Geo-Con challenged EFG's standing to oppose its motion, to which EFG advanced it held a financial stake in the outcome and a judgment would "impair EFG's collateral" and security interest under the pledge agreement.

Following oral argument, Judge Contillo concluded EFG lacked standing to oppose Geo-Con's motion for entry of default judgment against Earthmark, finding EFG had almost two years to exercise its rights under the pledge agreement and failed to do so. Further, the judge determined Geo-Con's claims were advanced solely against Earthmark and did not alter EFG's security interests under the loan and pledge agreements. Earthmark's complaint against Geo-Con was ordered dismissed with prejudice and final judgment was entered on behalf of Geo-Con

against Earthmark for $3,811,651, the sums approved for payment by the project engineer for work performed. The order was certified for execution purposes. See R. 4:42-1.

Geo-Con moved for additional compensation in the form of attorney's fees, costs, and pre-judgment interest, pursuant to the Prompt Payment Act (PPA), N.J.S.A. 2A:30A-1 to 2. On March 15, 2013, following oral argument, the judge granted Geo-Con an additional judgment of $1,715,139, which he certified as final.

EFG appealed (A-2475-12). In our October 2, 2013 order, we noted the matter was interlocutory and removed it from our plenary calendar. However, we did not dismiss the appeal pending the outcome of cross-motions for summary judgment, which had been filed.

Following oral argument on the summary judgment motions, Judge Contillo issued a written opinion on July 8, 2013. The judge denied EFG's and granted Geo-Con's motion for breach of contract, awarding Geo-Con, its successors and assigns, $1,354,386.31, which represented agreed cure payments due from EFG under the CCA, following Earthmark's default. Although the judge found Geo-Con breached the CCA by entering into the September 7, 2010 modification agreement with Earthmark without notice to or consent from EFG, he found EFG's claim failed because it did not prove resultant damages, "a[n] essential component of a breach of contract claim."

As to the remaining claims, the judge rejected a resubmitted challenge by EFG to discharge the construction liens and subsequent judgments, holding EFG lacked standing to challenge Geo-Con's claims against Earthmark. Geo-Con's allegations for quantum meruit and to establish an equitable lien against the mitigation credits were denied, as was its assertion EFG was responsible to satisfy cost overruns of more than $2 million. Finally, EFG's request to add Kane as a necessary party and include a claim for strict foreclosure was denied as untimely.

A final judgment memorializing these decisions was entered on July 12, 2013. The sheriff's sale of the leasehold interest was held on January 17, 2014.[2] EFG filed a separate Law Division action against the project engineer and Geo-Con. As against the latter, EFG alleged general negligence, negligent misrepresentation, breach of contract, strict foreclosure, and violation of the construction lien law. The record suggests that litigation is on-going.

Cross-appeals were filed by EFG and Geo-Con from the summary judgment orders (A-6202-12). We calendared the two appeals back-to-back and now address all issues in one opinion.

---

[2]   The sheriff's deed is not included in the record.  EFG's brief states Geo-Con was the successful bidder at sale; however, Geo-Con's brief states Kane was the successful bidder.

A-2475-12T4

II.

In its initial appeal (A-2475-12), EFG argues the judge erroneously denied it standing to challenge Geo-Con's default judgment against Earthmark, emphasizing EFG held a priority security interest in 100% of Earthmark's membership[3] in the project through the pledge agreement, essentially giving EFG the right to assume Earthmark's role in the project. EFG maintains this accords it a significant financial stake in any action affecting Earthmark's assets. EFG also challenges entry of default judgment against Earthmark, arguing a proof hearing was required prior to entry of any award of damages. In opposition, Geo-Con argues EFG's security interest does not confer standing to challenge Earthmark's obligations to its contractor.

In our review, we are obligated to defer to a judge's factual determinations when supported by the evidential record. Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 397 (2009). However, we accord no special deference to a trial judge's "interpretation of the law and legal consequences that flow from established facts," Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), which we review de novo. Dep't of Envtl. Prot. v. Kafil, 395 N.J. Super. 597, 601 (App. Div. 2007).

---

[3]   Earthmark, as an LLC, has membership interests, not stock.

"[S]tanding is an element of justiciability that cannot be waived or conferred by consent." In re Adoption of Baby T, 160 N.J. 332, 341 (1999). Rather, it is a threshold inquiry because "[a] lack of standing by a plaintiff precludes a court from entertaining any of the substantive issues for determination." Id. at 340. In short, the doctrine focuses on whether a party has a legal entitlement to seek relief from the court. Triffin v. Somerset Valley Bank, 343 N.J. Super. 73, 80 (App. Div. 2001). Our Supreme Court has described the essential purposes of the doctrine, which seeks to

> assure that the invocation and exercise of judicial power in a given case are appropriate. Further, the relationship of plaintiffs to the subject matter of the litigation and to other parties must be such to generate confidence in the ability of the judicial process to get to the truth of the matter and in the integrity and soundness of the final adjudication. Also, the standing doctrine serves to fulfill the paramount judicial responsibility of a court to seek just and expeditious determinations on the ultimate merits of deserving controversies.
>
> [N.J. Chamber of Commerce v. N.J. Election Law Enforcement Comm'n, 82 N.J. 57, 69 (1980).]

In New Jersey, standing is governed by R. 4:26-1, which provides "[e]very action may be prosecuted in the name of a real party in interest . . . ." To have standing in a case, our Supreme Court has held "a party must present a sufficient stake in the outcome of the litigation, a real adverseness with

respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision."  In re Camden Cnty., 170 N.J. 439, 449 (2002).

New Jersey courts take a liberal view of standing. Generally, the threshold to prove a party's standing is "fairly low."  Reaves v. Egg Harbor Twp., 277 N.J. Super. 360, 366 (App. Div. 1994).  "A financial interest in the outcome ordinarily is sufficient to confer standing."  Strulowitz v. Provident Life & Cas. Ins. Co., 357 N.J. Super. 454, 459 (App. Div.) (citing In re Camden Cnty., supra, 170 N.J. at 448), certif. denied, 177 N.J. 220 (2003).  "But standing is not automatic, and a litigant usually has no standing to assert the rights of a third party." Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 436 (App. Div. 2011) (citation and internal quotation marks omitted), certif. denied, 210 N.J. 478 (2012).

EFG argues the necessity to preserve its security interest satisfies these standards.  In financing the project, EFG obtained a significant security interest in Earthmark and its interest in the project.  In a November 13, 2012 letter opinion, the court acknowledged:

> The terms and conditions of the construction financing provided by EFG to Earthmark are set forth in a Secured Revolving Loan and Security Agreement dated as of July 13, 2010.  Pursuant to the agreements, Earthmark granted [EFG] a security interest in its leasehold interest

under the Lease, and in the proceeds from the sale of all credits originally issued under the Mitigation Banking Instrument ("MBI") and the proceeds of all future credits to be issued under the terms of the MBI, which provides for the Project to generate 69.98 mitigation credits for the tidal portion of the Project.

A condition of the loan included Earthmark's pledge of 100% of its membership interest, which

include[ed] without limitation, all of [Earthmark's] rights, powers, and remedies under the Operating Agreement, and the certificates representing such Pledged Interests, if any;

(b) any additional shares of Stock, or other right, title or interest in [Earthmark] from time to time acquired by [Earthmark] in any manner (which shares shall be deemed to be part of [Earthmark's] Pledged Interests), and any certificates representing such Stock;

. . . .

(h) [Earthmark's] rights with respect to any property or asset of [Earthmark]

. . . .

(q) any and all other rights, claims, property interests, or other interests of any kind that [Earthmark] may have from time to time with respect to or against [Earthmark], and any other or greater interest that [Earthmark] may have from time to time in, to or with respect to [Earthmark.]

Notably, this litigation was commenced jointly by EFG and Earthmark, showing the alignment of the two entities' interests.

Although Earthmark's current status or viability is not certain, its disclosed financial difficulties prevented it from fully participating in the litigation, including challenging Geo-Con's asserted damages claims. EFG argues standing should be granted, otherwise Geo-Con is effectively insulated from substantive challenge to its damage award and the resulting judgment encumbers the value of the project. See e.g., Assocs. Commercial Corp. v. Langston, 236 N.J. Super. 236, 242 (App. Div.) (allowing the defendant standing to challenge a lien on her house discovered after she sold it, despite the fact that escrowed proceeds would have been given to the plaintiff), certif. denied, 118 N.J. 225 (1989).

EFG fails to cite any authority supporting its position for standing that squarely addresses a relationship matching the one presented in this litigation. EFG is a party-plaintiff in the litigation and its interest in the project was financially intertwined with Earthmark through the pledge agreement and security interest in all of Earthmark's assets, including the project. EFG suggests its interest in the ground lease gives it the right to challenge any attaching lien. This is incorrect, because at all times EFG's interest was that of a secured creditor. Although EFG could have exercised control rights over the ground lease by exercising the provisions of the pledge agreement, it chose not to do so.

EFG's merits brief also offers only general assertions supporting its claim of standing, some of which were not presented to the trial judge. These challenges offer little more than unsupported contentions of financial harm and fail to demonstrate an adverse interest to Geo-Con's claims to payment for services performed under the contract, approved by the project engineer, for which payment was not made.

In its brief under A-6202-12, EFG states the lien was inflated by $2.1 million, a consequence of work performed under the unauthorized modification agreement, and contends if it were given standing it would have defeated the claim as invalid and unenforceable. No evidence supports such an assertion. As noted, EFG declined to exercise its rights under the pledge agreement to essentially step into Earthmark's shoes and advance whatever defenses Earthmark may have to the demanded payment. Likely, EFG chose to avoid this role as it is two-edged: not only would EFG have the right to control the project and Earthmark's assets, but also it would be saddled with the corresponding responsibility to address incurred liabilities, including the debt due to Geo-Con for services rendered. In limiting its role to that of a secured lender for the project, we cannot agree EFG held a stake in any dispute between Earthmark and its vendors. See Stubaus v. Whitman, 339 N.J. Super. 38, 51 (App. Div. 2001) (finding a plaintiff must

17

demonstrate harm from a direct injury), <u>certif. denied</u>, 171 <u>N.J.</u> 442 (2002).

We reject EFG's claim the trial judge erred by denying it standing to challenge Geo-Con's judgement against Earthmark. Having essentially made this same analysis, Judge Contillo entered a default judgment for unpaid, approved invoices totaling $3,811,651, concluding these sums were adequately proven as due from Earthmark. An additional award for attorney's fees, litigation costs, and pre-judgment interest was deemed subject to proofs. During the hearing, EFG participated and made its position known. Following review, these amounts were found to be obligations owed to Geo-Con by Earthmark.

On appeal of that order, EFG argues the entitlement to legal fees is overstated and fees should have been limited to count three of Geo-Con's complaint.[4] We disagree.

<u>Rule</u> 4:43-2(b) grants a trial court the discretion to require proof of the quantum of damages as well as entitlement to relief, prior to entry of default judgment. <u>Douglas v. Harris</u>, 35 <u>N.J.</u> 270, 276 (1961). Factual findings must establish the entitlement to relief. <u>See</u> <u>Curtis v. Finneran</u>, 83

---

[4]  Geo-Con's claim was based on the PPA, which provides in pertinent part: "In any civil action brought to collect payments pursuant to this section, the action shall be conducted inside of this State and the prevailing party shall be awarded reasonable costs and attorney fees." <u>N.J.S.A.</u> 2A:30A-2(f).

N.J. 563, 569, (1980) ("In a non[-]jury civil action, the role of the trial court at the conclusion of a motion a trial is to find the facts and state conclusions of law.") (citing R. 1:7-4).

When addressing statutorily authorized fee awards for "separate claims in a complaint [which] share a common core of facts with . . . or are based on related legal theories, the trial judge, when awarding fees, must focus on the significance of the overall relief obtained by [the] plaintiff in relation to the hours reasonably expended." Silva v. Autos of Amboy, Inc., 267 N.J. Super. 546, 551 (App. Div. 1993). Certainly, where a party presents "distinctly different claims for relief in one lawsuit, work on those unrelated claims cannot be deemed in pursuit of the ultimate result achieved." Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 318 (App. Div. 2012) (citation and internal quotation marks omitted). "However, when the p[arty]'s claims for relief 'involve a common core of facts or will be based on related legal theories,' such a suit cannot be viewed as a series of discrete claims." Silva, supra, 267 N.J. Super. at 556 (quoting Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40, 51 (1983)).

We note, the methodology utilized in addressing a request for statutorily authorized fees must consider the relief obtained, the justification of the fees asserted, see Litton

19

Indus., Inc. v. IMO Indus., Inc., 200 <u>N.J.</u> 372, 386 (2009), and the reasonableness of the amount sought, <u>Rendine v. Pantzer</u>, 141 <u>N.J.</u> 292, 334-35 (1995). These principles are further guided by <u>Rule</u> 4:43-2(b) (addressing the appropriate amount of damages awarded) and <u>R.P.C.</u> 1.5 (assessing the reasonableness of counsel fees requested).

We have considered the written opinion by Judge Contillo and conclude he did not mechanically allocate fees according to various claims, <u>Silva</u>, <u>supra</u>, 267 <u>N.J. Super.</u> at 551, but thoughtfully followed the above principles in making the fee award. The judge found the claims arose from a common core of facts and were based upon related legal theories, emphasized the complexity of the issues and the interrelation of the facts, and concluded the legal services rendered represented, "all legitimate, appropriate, core work that had to be done." Further, the judge analyzed the fee request against the criteria of <u>R.P.C.</u> 1.5. He characterized time entries as consistent with "commercial reasonableness," fairly stating tasks undertaken and time allocated to sufficiently apprise the court and the client on "what they're getting billed for."

"[A] reviewing court will disturb a trial court's award of counsel feels 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" <u>Litton Indus.</u>, <u>supra</u>,

200 <u>N.J.</u> at 386 (quoting <u>Packard-Bamberger & Co. v. Collier</u>, 167 <u>N.J.</u> 427, 444 (2001)). We find no basis to intervene.

### III.

### A.

Notwithstanding entry of this judgment, the contractual dispute between Geo-Con and EFG was thereafter litigated. In the related appeal, EFG challenges the order for summary judgment, maintaining the judge erred in denying summary judgment against Geo-Con for its breach of the CCA by its unauthorized modification to perform extra work. EFG also challenges the awarded judgment to Geo-Con for cure payments as unsupported by the record and contradictory to the judge's prior findings. We are not persuaded.

EFG was afforded the opportunity to prove its claims. The judge agreed Geo-Con breached a material term of the CCA, when it executed the September 7, 2010 side-agreement with Earthmark and failed to provide notice to EFG of the overruns. However, EFG offered no argument or proof it sustained damages by this breach. When specifically asked by Judge Contillo at oral argument whether damages resulted, counsel's response was "no."

To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustained damages. <u>Murphy v.</u>

<u>Implicito</u>, 392 <u>N.J. Super.</u> 245, 265 (App. Div. 2007). EFG's assertion that mere proof of the breach deprives Geo-Con of any payment is legally unsupportable. <u>See</u> <u>Lone v. Brown</u>, 199 <u>N.J. Super.</u> 420, 425 (App. Div.) (holding summary judgment on a breach of contract claim was appropriate because grievant could not assert damages), <u>appeal dismissed</u>, 103 <u>N.J.</u> 480 (1986).

EFG, for the first time on appeal, now lists, as resultant damages, all expenses incurred in the litigation, as well as the loss of the ground lease at sheriff's sale and the possible inability to exercise its unencumbered security interest. The costs of litigation are insufficient to support damage elements of a claim. <u>See</u> <u>Satellite Gateway Commc'ns, Inc. v. Musi Dining Car Co.</u>, 110 <u>N.J.</u> 280, 284-85 (1988) (holding attorney's fees incurred to prosecute breach of contract claim insufficient to satisfy resultant damages). The other suggested damages were not presented to the trial court. We reject EFG's late attempt to justify its position, noting

> [i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.
>
> [<u>Nieder v. Royal Indem. Ins. Co.</u>, 62 <u>N.J.</u> 229, 234 (1973) (citation and internal quotation marks omitted).]

22

Finally, EFG received notice of and chose not to participate in the sheriff's sale, and there is no evidence its overall security interest will be impaired. Thus, these contentions are unproven and not tied to the asserted breach of contract.

Regarding the related challenge to the judge's finding EFG elected to provide cure payments, we recite the relevant terms of parties' agreement. The CCA defines the rights and responsibilities in the event of Earthmark's default, as follows:

> 1. . . . Contractor [Geo-Con] hereby agrees that if an event of default has occurred under the Loan Agreement . . . and such default is not cured within any applicable grace or cure period . . . and if Lender [EFG] has given written notice from Lender to Contractor of such default, then Lender shall have the right, at Lender's option, either to terminate the Contract with respect to the Property . . . or to require that Contractor perform its obligations under the Contract for the benefit of the Lender.
>
> . . . .
>
> 2. . . . Contractor agrees to not enter into any amendment or modification of the Contract without the prior written consent of Lender.
>
> 3. Contractor agrees to give prompt written notice to Lender of any default or breach by Borrower of any of its obligations under the Contract, and that, prior to Contractor exercising any of its rights or remedies under the Contract, Lender shall

23

> have an opportunity to remedy or cure such breach for a period of thirty (30) days after receipt of notice thereof . . . .

We disagree with EFG's assertion that liability for cure payments must be preceded by and is linked to its assumption of the construction contract. There is nothing in the language of paragraphs one and three supporting an interpretation they are interdependent. In paragraph one, which addresses a remedy available to EFG in the event Earthmark defaults under the Loan Agreement, Geo-Con agrees to permit EFG to terminate the construction contract or essentially step into Earthmark's shoes and require Geo-Con to continue performance for EFG's sole benefit. Conversely, paragraph three addresses Earthmark's breach of the construction contract with Geo-Con and affords EFG the "opportunity to remedy or cure [Earthmark's] breach for a period of thirty (30) days after receipt of notice thereof." The plain language of these distinct provisions gives EFG a the right to keep construction on track by making cure payments, while it determines whether to exercise its right to step into the shoes of Earthmark and assume responsibility to complete the construction contract, which may be made after the thirty-day cure period.

In its February 8, 2011 correspondence to Geo-Con, EFG stated it was ready to provide cure payments upon receipt of the engineer's certificate certifying payment, stating:

> Lender is prepared to cure certain of the payment defaults of the Borrower . . . . Unfortunately, Geo-Con has not presented all documentation required for payment under the Contract with respect to the amounts represented by the Cure Notices. Lender is willing to promptly make cure payments for the following amounts upon receipt of the engineer's certification executed by the engineer and required by the terms of the Contract[.]

This determination reflects an effort to keep the project on track, pending EFG's consideration of its options. Judge Contillo agreed with EFG, concluding it had no obligation to satisfy the deferred charges generated from the modification agreement. However, EFG, despite its assertions, never remitted payment for the two invoices identified as acceptable, even after it received the engineer's certification.

EFG now suggests other documentation was mandated under the CCA, which Geo-Con failed to provide. However, EFG did not detail what was missing to the trial judge. On appeal, EFG asserts Geo-Con should have delivered lien waivers and withdraw its work stoppage notice in writing. The fact is, no liens were filed at this stage of the dispute and payment was never made by EFG in exchange for discontinuing the work stoppage.

EFG also renews its challenge to the validity of the construction liens, maintaining the judge's statutory interpretation of N.J.S.A. 2A:44A-5(b) was erroneous. The exemption to the CLL states:

A-2475-12T4

No liens shall attach nor shall a lien claim be filed:

. . . .

b. For public works or improvements to real property contracted for and awarded by a public entity; provided, however, that nothing herein shall affect any right or remedy established pursuant to the "municipal mechanic's lien law," <u>N.J.S.[A.]</u> 2A:44-125 et seq.

[<u>N.J.S.A.</u> 2A:44A-5(b).]

EFG reads this provision as exempting any public works project, arguing the provision for "improvements to real property" is not contingent upon a project being "contracted for and awarded by a public entity." We disagree substantially for the reasons set forth in Judge Contillo's September 20, 2011 written opinion. <u>R.</u> 2:11-3(e)(1)(A).

Although the mitigation bank itself fit within the definition of a public works project, the joint public-private venture neither imposed nor required substitute surety assurances, i.e., protections of payment or performance bonds or other guarantees for the benefit of contractors or material suppliers working on public projects, supporting the argument the right to place a lien on the subject property was barred. <u>See</u> <u>N.J.S.A.</u> 2A:44-143(a)(1). This distinction was detailed in the trial judge's opinion, which we conclude correctly decided this issue. <u>R.</u> 2:11-3(e)(1)(A).

We also reject as lacking merit, EFG's challenge to the timeliness of the lien and to its propriety.  R. 2:11-3(e)(1)(E).

In the final issue raised, EFG argues the judgment was improperly entered against its successors and assigns. Plaintiff asserts Kane never participated in any of the trial court proceedings and cannot be held liable.  We disagree.

Successor liability, which holds one entity accountable for another entity's debts, is an equitable doctrine that requires a case-by-case assessment.  Baker v. Nat'l State Bank, 161 N.J. 220, 227-28 (1999).  A successor entity will be held liable for the debts of its predecessor where it is a continuation of the same.  Lefever v. K.P. Hovnanian Enter., 160 N.J. 307, 310 (1999).  In this matter, the facts show Kane is 100% owned by EFG and was created for the sole purpose of assuming and succeeding to EFG's rights with respect to the project.  EFG's allegation its due process rights were violated because Kane was not a party to the litigation is legally unsupported.

B.

Geo-Con's cross-appeal challenges the trial judge's summary judgment dismissal of (1) its claim for quantum meruit against EFG, as set forth in the July 8, 2013 opinion, and (2) its assertion of an equitable lien on the mitigation credits received on the projected proceeds generated from their sale, as

set forth in the November 13, 2012 opinion. We have considered the arguments advanced on appeal, in light of the record and applicable law and reject Geo-Con's arguments substantially for the reasons set forth in the judge's thorough opinions. <u>R.</u> 2:11-3(e)(1)(A). We add these brief comments.

The equitable doctrine of quantum meruit allows "the performing party to recoup the reasonable value of services rendered." <u>Weichert Co. Realtors v. Ryan</u>, 128 <u>N.J.</u> 427, 438 (1992). Recovery "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another," <u>id.</u> at 437 (citation and internal quotation marks omitted), and requires proof of "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." <u>Starkey, Kelly, Blaney & White v. Estate of Nicolaysen</u>, 172 <u>N.J.</u> 60, 68 (2002) (citations and internal quotation marks omitted). Geo-Con cannot meet this test.

Even if the requested compensation for services was reasonable, payment for the work performed under the side-modification agreement was between Geo-Con and Earthmark. Geo-Con ignored its obligation under the CCA to notify EFG. There was no expectation of payment from EFG or demonstrated proof EFG

28

accepted the work and corresponding obligation or actually received a benefit therefrom.

We also reject Geo-Con's claim EFG was unjustly enriched. To demonstrate unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust" and that the plaintiff "expected remuneration" and the failure to give remuneration unjustly enriched the defendant. VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). No evidence to support this position is found within the record.

An equitable lien may lie when unjust enrichment or an express agreement to grant a lien against a specific property is shown. Id. at 546. Additionally, an equitable lien can be imposed, if based on the "the dictates of equity and conscience . . . a contract of reimbursement could be implied at law." Ibid.

Here, no express or implied agreement was executed to grant a lien on the underlying realty and we find no basis to infer EFG agreed to provide payment for the overrun costs. Also, as noted, there is no evidence of unjust enrichment. The trial judge's written opinion thoroughly considered the law as applied to the facts presented on this issue. We find no flaw in his analysis. R. 2:11-3(e)(1)(A).

To the extent additional arguments had been raised but were not specifically addressed, they were found to lack sufficient merit to warrant extensive discussion in our opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION