**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2903-17T3

MAPLE STREET
DEVELOPERS, LLC,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

SAMUEL PINTER &
ASSOCIATES, SAMUEL
PINTER, individually, and L.P.
MAPLE REALTY, LLC,

      Defendants-Respondents/
      Cross-Appellants.

_____

Argued telephonically August 28, 2019 –
Decided September 24, 2019

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-2413-15.

Avi Rosengarten argued the cause for appellant/cross-
respondent.

Joseph Rakofsky argued the cause for respondents/cross-appellants.

PER CURIAM

Plaintiff Maple Street Developers, LLC, the prospective purchaser in a $2,000,000 real estate transaction, appeals from a Law Division judge's denial of reconsideration of the judgment rendered after a bench trial. The judgment was entered November 9, 2017, and the judge incorporated his written decision in the January 25, 2018 denial of reconsideration. After trial, the judge concluded that defendants, prospective sellers Samuel Pinter & Associates, Samuel Pinter (individually), and L.P. Maple Street Realty, LLC, breached the parties' agreement for the sale of real estate. He awarded $100,000 in compensatory damages, plus out-of-pocket expenses incurred by plaintiff as a result of defendant's breach of the contract. The judge also ordered the return of plaintiff's escrowed $125,000, the remaining amount of the contract deposit. Defendants cross-appeal. We affirm.

Based mainly on the credibility of witnesses, the judge found the following circumstances in his initial decision. Unless otherwise indicated, all quoted material is taken from the November 9, 2017 opinion.

Plaintiff, a business entity owned by Etta Ostreicher, entered into the agreement of sale on September 16, 2014, for the acquisition of real estate in

Jersey City. Plaintiff paid $200,000 as a security deposit, balance of the purchase price due at closing. Among other things, the agreement made time of the essence and required a clean environmental assessment. The agreement also called for the seller to deliver marketable title.

The contract contained a $100,000 liquidated damages provision — payable by plaintiff to defendant in the event of a breach. No mention was made of liquidated damages in the event of a breach by defendants, unsurprising given that ordinarily specific performance is the remedy for a breach by the seller.

By December 2014, the sale had not been consummated, the "phase one" environmental inspection had not been completed, and the record is silent, other than Ostreicher's assertion to that effect, as to whether plaintiff would have been able to finance the purchase. As the judge said, this was "an arguably critically important condition in a $2,000,000 contract without a financing contingency."[1]

On December 30, 2014, defendants' principal, Samuel Pinter, who testified on behalf of the company, and Ostreicher, amended the contract. The relevant language, drafted by Ostreicher's attorney, stated:

> Purchaser shall, no later than January 30, 2015, TIME BEING OF THE ESSENCE, close on the Premises . . . [i]n the event the Purchaser fails to close

---

[1] When the contract was extended, Ostreicher's attorney had $891,000 in escrow, but no other proofs were produced regarding financing.

A-2903-17T3

on or before January 30, 2015, due to no fault of the Seller, the Contract shall be . . . terminated and neither party shall have any claims against the other.

Ostreicher released $75,000 from the $200,000 deposit as "consideration for the amendment." Time was again made of the essence, and the closing date fixed for January 30, 2015.

In January, Ostreicher began to experience "non-specific suspicions" regarding defendants' ability to convey clear title. While conducting her own independent online title research, she discovered a significant deed restriction. When Jersey City Redevelopment Agency (JCRA) conveyed the property to defendants in 2009, the conveyance was subject to a rider stating that

the restrictions, covenants, and conditions imposed by Section 2.12, 5.02, Article VI, and 7.02 of the Redevelopment Agreement between LMD #13 Urban Renewal, LLC (predecessor to Grantee) and the Grantor, dated November 13, 2006, copies of which Sections are annexed hereto, shall hereby be incorporated into and become a part of this Deed as if fully set forth herein.

The relevant sections of the Redevelopment Agreement are not included in either appendix. It is, however, undisputed that the rider obligated defendants to obtain the JCRA's express written approval before a transfer to a new owner. Missing from the record is an explanation for the omission of the deed restriction from the initial title report.

4

Ostreicher notified her real estate attorney about the restriction. He in turn notified Pinter. Pinter offered to refund the deposit, but Ostreicher refused because she wished to proceed with the project. The events, not altogether clear to this point, become even muddier.

Ostreicher testified that she then hired a second attorney, who on April 6, 2015, met with the JCRA's counsel to learn about the necessary process for the approval. The record does not describe any additional action she took to obtain JCRA review of the proposed sale.

Pinter testified he called the agency repeatedly "to facilitate Ostreicher's application," and on February 20, 2015, Pinter sent the JCRA an email forwarding the contract. Pinter also said prior to being informed by Ostreicher's real estate attorney, he was unaware of the deed restriction. He claimed he owned seventy or eighty other parcels of real estate at the time.

Pinter's son, who had in December 2014, conveyed Pinter's concern to Ostreicher that the sale was never going to occur, again began to communicate with her directly. He repeatedly emailed her inquiring about her intentions. Ostreicher responded that her redevelopment counsel "was waiting 'to get on [the] calendar for the designation.'"

Meanwhile:

A-2903-17T3

On May 6, 2015, Maple Realty received an offer for $2.75 million from William Rosato ("Rosato"), owner of MC Maple, LLC ("MC Maple"). [Pinter's son] emailed Ostreicher to inform her of the offer. He told her that they would move forward with the new buyer as soon as possible. He also indicated that "[they] needed from [her] attorney a three or four sentence letter" indicating that she was approved as a redeveloper by the JCRA. If the letter was not received by Friday, Ostreicher's deposit would be refunded and the contract would be voided. She responded that she was doing her job and that [Pinter's son] still had to send a consent letter to the JCRA.

On May 11, 2015, Ostreicher received notice by email to void the contract from Pinter's assistant . . . . The notification was not hand delivered or sent by overnight mail to Ostreicher as required in the contract. This deviation from the contract is not dispositive as the conduct of the parties evinced their consent to communicate in multiple ways, including email. They also often acted without the assistance of counsel.

Ostreicher hired litigation counsel . . . . She continued trying to get approval as a developer. By mid-May, the JCRA had not contacted her to fill out an application or questionnaire.

On May 27, 2015, Rosato's attorneys, Connell Foley, sent a consent letter to Pinter for submission to the JCRA on behalf of Rosato and MC Maple. MC Maple purchased 81 Monitor in October of 2015. At the closing, the parties agreed to escrow $750,000 from the sale proceeds because of plaintiff's pending complaint.

6

After discussing, one by one, plaintiff's causes of action and defendants' defenses, the judge found merit only to the claim defendants had breached the contract. He concluded the breach occurred because they could not deliver marketable title as required under the express terms of the contract, in which the deed restriction was not even mentioned. The judge found that since the third-party purchaser had invested over a million dollars on infrastructure and other site work on the subject parcel, specific performance was not an appropriate remedy.[2]

The judge also noted that although a portion of the incidental expenses incurred by plaintiff were quantified during the trial, namely, for the cost of the environmental report and boundary survey, legal expenses incurred by plaintiff for the preparation of the contract and for title services were not quantified. The court ultimately settled on $100,000 as compensatory damages, the refund of the $125,000 escrow balance, plus reimbursement of out-of-pocket expenses, for the breach. He found plaintiff's claim that $750,000 was the appropriate measure of damages — the difference between the $2,000,000 purchase price Ostreicher was willing to pay and the $2,750,000 price paid by the third-party

[2] Plaintiff's initial request to enjoin the sale to the third party had been denied by another judge.

7

buyer —too speculative. In the judge's view, plaintiff presented very limited proofs regarding damages. Reading between the lines of his decision, because of the speculative nature of damages suffered by plaintiff as a result of defendant's inability to convey clear title, and her seeming inability to schedule closing, the amount in controversy for defendant's breach was reasonably determined to be $100,000.

The judge reiterated the standard of review for reconsideration motions in his January 25, 2018 decision. See R. 4:49-2. He said that for the reasons stated in his original opinion, he could not fix

> the quantum of damages [at] simply the price difference between the parties' contract, and the contract price between defendant and the subsequent purchaser. The court could not rely upon speculative, unascertainable and insufficient proofs to rotely award plaintiff that amount.
> Despite the speculative nature of plaintiff's damage claim, and the incomplete proofs adduced at trial, it would have been inequitable to deny plaintiff any recovery. As noted in the trial decision, a party to a contract cannot breach a contract and simply return the deposit to preclude any other recovery.

The judge accepted plaintiff's expert's testimony that the permitted density for the subject property increased after the contract was terminated. He reiterated his earlier decision that plaintiff was entitled to the sum seller would

A-2903-17T3

have received if purchaser breached plus the out-of-pocket expenses, and the

return of her contract deposit balance.

Plaintiff on appeal raises the following points:

> POINT I – THE LOWER COURT ERRED IN DETERMINING THAT THE CONTRACT WAS TERMINATED BY NOTICE NOT PERMITTED BY THE CONTRACT.

> POINT II – THE LOWER COURT ERRED DETERMINING THAT PLAINTIFF'S MEASURE OF DAMAGES WAS SPECULATIVE AND UNASCERTAINABLE.

Defendants on cross-appeal raise the following points:

> POINT 1
> DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE APPELLANT-CROSS RESPONDENT BREACHED, TWICE, THE "TIME IS OF THE ESSENCE" CLAUSE IN THE SALES CONTRACT AND, CONSEQUENTLY, BREACHED THE CONTRACT, TWICE, YET, WAS IMPROPERLY AWARDED WITH A $111,965.00 VERDICT BY JUDGE D'ALESSANDRO.

> POINT 2
> DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF DISCRETION, REFLECTED IN HIS HONOR'S DECISION TO REFORM, UNILATERALLY, A SALES CONTRACT, AND IMPOSE,

9

UNILATERALLY, A LIQUIDATED DAMAGES PROVISION AGAINST THE SELLER, WHEN IT IS IRREFUTABLE THAT THE SALES CONTRACT (DULY NEGOTIATED BETWEEN THE PARTIES) CONTEMPLATED A LIQUIDATED DAMAGES CLAUSE TO BE CHARGED ONLY AGAINST THE BUYER, CLEARLY PREJUDICED CROSS APPELLANTS-RESPONDENTS, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANTS-RESPONDENTS, IF PERMITTED TO STAND.

POINT 3
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF DISCRETION, REFLECTED IN HIS HONOR'S DECISION TO IMPOSE LIQUIDATED DAMAGES AGAINST DEFENDANTS, EVEN THOUGH THE RECORD IS CLEAR THAT PLAINTIFF'S INADEQUATE FINANCES RESULTED IN HER REFUSAL TO REQUEST JCRA APPROVAL, WHICH CAUSED HER, TWICE, TO BREACH THE "TIME IS OF THE ESSENCE" CLAUSE, IS PREJUDICIAL ERROR, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANT-RESPONDENTS, IF PERMITTED TO STAND.

POINT 4
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF DISCRETION, REFLECTED IN HIS HONOR'S DECISION TO REFORM, UNILATERALLY, A SALES CONTRACT, AND IMPOSE, UNILATERALLY, A LIQUIDATED DAMAGES

A-2903-17T3

PROVISION AGAINST THE SELLER (EVEN THOUGH THE CONTRACT WAS ALREADY DULY NEGOTIATED BETWEEN THE PARTIES) AND SPECULATE AS TO WHAT THE LOST FUTURE PROFITS WOULD HAVE BEEN FOR PLAINTIFF HAD SHE TAKEN TITLE (EVEN THOUGH PLAINTIFF, TWICE, BREACHED THE "TIME IS OF THE ESSENCE" CLAUSE), CLEARLY PREJUDICED CROSS APPELLANTS-RESPONDENTS, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANTS-RESPONDENTS, IF PERMITTED TO STAND.

POINT 5
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF DISCRETION, REFLECTED IN HIS HONOR'S DECISION TO IMPOSE, UNILATERALLY, A LIQUIDATED DAMAGES PROVISION AGAINST THE SELLER, EVEN THOUGH COUNSEL FOR APPELLANT-CROSS RESPONDENT ADMITTED (WHEN HE REALIZED HE WAS IN POSSESSION OF CRUCIAL EVIDENCE COUNSEL PREVIOUSLY ALLEGED DID NOT EXIST), "THERE IS NO WAY I WOULD HAVE BROUGHT THIS TO TRIAL IF I HAD RECEIVED THIS LETTER," CLEARLY PREJUDICED CROSS APPELLANTS-RESPONDENTS, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANTS-RESPONDENTS, IF PERMITTED TO STAND.

POINT 6
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF

DISCRETION, REFLECTED IN HIS HONOR'S DETERMINATION THAT NEITHER THE ORIGINAL CONTRACT, NOR THE AMENDMENT, REQUIRED PROOF OF FUNDS TO CLOSE, EVEN THOUGH THE RECORD IS COMPLETELY SILENT WITH RESPECT TO WHETHER PROOF OF FUNDS WERE REQUIRED, IS PREJUDICIAL ERROR, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANT-RESPONDENTS, IF PERMITTED TO STAND.

POINT 7
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF DISCRETION, REFLECTED IN HIS HONOR'S DECISION TO PERMIT SO-CALLED EXPERT, OSWIN E. HADLEY, TO TESTIFY THAT APPELLANT-CROSS RESPONDENT WOULD HAVE BEEN APPROVED BY THE JCRA IS SPECULATIVE AND NET OPINION AND CONSTITUTES PREJUDICIAL ERROR, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANT-RESPONDENTS, IF PERMITTED TO STAND.

POINT 8
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF DISCRETION, REFLECTED IN HIS HONOR'S DECISION TO PERMIT SO-CALLED EXPERT, OSWIN E. HADLEY, TO TESTIFY EVEN THOUGH MR. HADLEY WAS THE LAW PARTNER OF COUNSEL FOR PLAINTIFF AND HAD A FINANCIAL OUTCOME IN THE CASE,

CONSTITUTES PREJUDICIAL ERROR, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANT-RESPONDENTS, IF PERMITTED TO STAND.

POINT 9
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THE TRIAL JUDGE'S ABUSE OF DISCRETION, REFLECTED IN HIS HONOR'S DECISION TO REFUSE TO RECALL APPELLANT-CROSS RESPONDENT TO THE STAND TO DETERMINE WHEN AND HOW SHE LEARNED OF THE DEED RESTRICTION IS PREJUDICIAL ERROR, WHICH WILL RESULT IN EXTREME HARM TO CROSS APPELLANT-RESPONDENTS, IF PERMITTED TO STAND.

POINT 10
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED "IN THE INTEREST OF JUSTICE," AS AN APPELLATE REVIEW AND GUIDANCE ARE IMMEDIATELY NECESSARY, OTHERWISE THE RULING BELOW, IF PERMITTED TO STAND, WILL IRREPARABLY INJURE CROSS APPELLANT RESPONDENTS.

POINT 11
DECISION SHOULD BE MODIFIED AND JUDGMENT AGAINST CROSS APPELLANTS-RESPONDENTS SHOULD BE REVERSED BECAUSE THERE IS SUFFICIENT EVIDENCE TO DEMONSTRATE AN OBJECTIVELY REASONABLE DOUBT AS TO THE TRIAL COURT'S IMPARTIALITY BECAUSE THE COURT'S RULING WAS BASED ON ARBITRARY

13

GROUNDS AND THE PUNITIVE MEASURES IMPOSED UPON CROSS APPELLANT-RESPONDENTS ARE UNREASONABLE AND DISPROPORTIONATE.

POINT 12
THE LOWER COURT NEITHER ERRED IN DETERMINING THAT THE CONTRACT WAS TERMINATED BY NOTICE NOT PERMITTED BY THE CONTRACT AND THAT PLAINTIFF'S MEASURE OF DAMAGES WAS SPECULATIVE AND UNASCERTAINABLE.

POINT 13
THIS HONORABLE COURT SHOULD PROVIDE RELIEF TO CROSS APPELLANTS-RESPONDENTS PURSUANT TO RULE 4:50-1, WHICH SPECIFICALLY CONTEMPLATES "FRAUD" AND "MISREPRESENTATION" AS BASES FOR RELIEF, TO AVOID A "GRAVE INJUSTICE."

I.

Plaintiff's first point that the contract was terminated by improper notice does not warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).  By their conduct, the parties modified the agreement with regard to notices.  They accepted communications from each other in a variety of ways, held themselves bound to those communications, and had actual notice of what was taking place.

Our standard of review for fact findings by a judge presiding over a bench trial is well-established.  We review the matter to determine whether they are supported by substantial credible evidence in the record.  Rova Farms Resort,

14                                        A-2903-17T3

Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). If the facts are supported by the record, we then ask whether the judge properly applied the law. We owe no deference to the trial judge's interpretation of the law, or to his application of the law to the facts and review them de novo. Manalapan Realty L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Compensatory damages, also known as expectation damages, are designed to "put the innocent party into the position he or she would have achieved had the contract been completed." Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 12 (2007). Because this type of damage is directly related to the breach, compensatory relief is awarded based on the parties' reasonable expectations, and a defendant is not chargeable for an unforeseeable loss. Donovan v. Bachstadt, 91 N.J. 434, 444 (1982). Similar to compensatory damages, consequential damages or incidental damages may be pursued where the injury is more indirect and are also only recoverable if the damage was reasonably foreseeable at the time the contract was entered into. George H. Swateck, Inc. v. N. Star Graphics, Inc., 246 N.J. Super. 281, 285 (App. Div. 1991).

A-2903-17T3

II.

The judge's findings of fact are supported by substantial credible evidence in the record. Given record support for those findings, it follows that plaintiff carried her burden of proof, establishing a breach of contract by a preponderance of the evidence. All plaintiff needed to demonstrate here was that defendant, despite the representations in the written agreement of sale, was unable to convey good title.

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and [that] the breach caused the claimant to sustain[] damages." EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 345 (App. Div. 2015). Clearly the parties had an agreement. From its inception, however, without JCRA's approval, clear title could not be conveyed. This was a breach, and after months of pursuing the matter, it came to naught entitling plaintiff to damages. We therefore also agree with the judge's conclusion of law.

The question of damages is more difficult. The claim the damages should be fixed at $750,000 — the difference between the purchase price she agreed to pay and the third party paid — is not supported by any legal precedent. And the

basis for the claim is entirely speculative. That Rosato would have paid $2,750,000 for the property had plaintiff begun to develop the site as she planned cannot be determined with certainty.

III.

With regard to the cross-appeal — point thirteen has no substance. Rule 4:50-1 addresses post-judgment motions made to the trial court, not issues on appeal. No further discussion is necessary. See R. 2:11-3(e)(1)(E).

Defendants' cross-appeal points two through nine seem to posit without substantive explanation that the trial judge's decision, which defendants characterize as an abuse of discretion, should be reversed because the judgment will result in "extreme harm" to defendants. We know of no legal doctrine that warrants review of a bench trial decision on the basis that the judge's purported alleged abuse of discretion results in extreme harm to a litigant.

The abuse of discretion standard does apply to points seven and eight, regarding the judge's admission of expert testimony. Evidentiary rulings, such as whether or not to admit expert testimony, and the weight to be accorded to it, are reviewed for abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 13 (2008). Here, however, admission of the testimony was not a major factor in the judge's decision.

17

Point eleven attacks the judge's "impartiality" on the basis that the evidence raised "an objectively reasonable doubt." We are unaware of anything in the record, or the law, making this adverse decision, perceived by the litigant as "arbitrary" and "punitive," a basis for an attack on the judge's impartiality.

No further discussion is warranted on points two through nine, and eleven. See R. 2:11-3(e)(1)(E).

In points one and twelve, defendants attack the compensatory damages as being unfounded, characterizing the sum as an improper award of liquidated damages, and objecting that it was too speculative. Certainly, it would have been helpful to appellate review if the trial judge had expansively explained his reasoning for awarding damages in the same amount as the seller would have received in the event of plaintiff's breach. On the other hand, defendants were unable to convey clear title to Ostreicher at all relevant times.

Plaintiff invested nearly a year in the purchase of this property, whether Ostreicher's efforts were as focused as they could have been or not. Some compensatory damages were certainly appropriate. It is difficult to place a price tag on the expenditure of time and energy in the negotiations leading to the contract, and after it was signed. We are also mindful that plaintiff paid $75,000 as consideration for the amendment to the contract. Although the decision to

18

award the $100,000 could have been tethered in more comprehensive reasoning, there is no basis for disturbing the award. Seller could readily anticipate that buyer would be harmed by many months of ultimately fruitless efforts. The judge's fact finding on this score is supported by the record. His application of the law on damages is unobjectionable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION