224 N.J. Super. 619 (1988)
541 A.2d 237
CLAUDETTE REBISH F/K/A CLAUDETTE MALOOLY, ON BEHALF OF HERSELF AND ON BEHALF OF OTHERS SIMILARLY SITUATED, PLAINTIFF-APPELLANT,
v.
GREAT GORGE, A NEW JERSEY CORPORATION; THRIFT CREDIT CORP., A NEW YORK CORPORATION; "JOHN DOE" (BEING FICTITIOUS NAME, INDIVIDUALLY AND COLLECTIVELY FOR OFFICERS AND DIRECTORS OF GREAT GORGE); "RICHARD ROE" (BEING A FICTITIOUS NAME, INDIVIDUALLY AND COLLECTIVELY FOR OFFICERS AND DIRECTORS OF THRIFT CREDIT CORP.), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 1988.
Decided April 27, 1988.
*620 Before Judges PRESSLER, MUIR, Jr., and SKILLMAN.
L. Steven Pessin argued the cause for appellant.
John J. Petriello argued the cause for respondents Great Gorge and Thrift Credit Corp. (Levy & Ehrlich, attorneys; John J. Petriello on the brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
*621 The issues raised here are whether the trial court properly denied plaintiff's application for class certification and properly dismissed Counts Two, Three, Four and Five of plaintiff's amended complaint.[1] Plaintiff alleges error in the denial and the dismissals. We conclude the trial court properly denied the class certification application and properly dismissed Counts Four and Five, but should not have dismissed Counts Two and Three.
The facts relevant to the application for class certification are generally undisputed. Sometime around 1965, defendant Great Gorge sold 5% debenture bonds at $1000 each to 330 New Jersey residents. The bonds had a due date of July 1, 1980, but interest was payable each year commencing July 1, 1966. They contained a clause subordinating bond principal and interest payments to any present or future senior indebtedness or secured obligations of Great Gorge. They further contained provisions limiting interest payable to the amount of net earnings of the company in the prior year. As an alternative to receiving interest, bondholders could elect to receive free skiing and preferred lift lines at the local skiing facility until October 1970 or until the bond was redeemed, whichever later occurred.
At about the same time, defendant sold 5% debenture bonds at $1500 each to 500 New Jersey residents. These bonds had a due date of July 1, 1983, with interest payable annually commencing July 1, 1969, and every September 1 thereafter. These bonds contained the same provisions as the $1000 bonds.
In 1983, plaintiff's trial counsel,[2] on behalf of another client, sought payment on two $1500 bonds with accrued interest. On *622 August 5, 1983, counsel for Great Gorge responded by letter indicating the company was in default on its senior indebtedness and that it had no funds to satisfy the bonds. He further stated that bankruptcy, the only alternative if bondholders demanded payment, would, due to the size of the senior indebtedness, wipe out all bondholders. The letter requested bondholder restraint in seeking redemption.
Trial counsel then filed a complaint, venued in Bergen County, on behalf of Rudolph Zika seeking payment of principal and interest on the two bonds. Following a trial court denial, without prejudice, of plaintiff's motion for class certification and an interlocutory appeal in which we found a class action available under R. 4:32-1(b)(3), Judge Ciolino, on January 17, 1986, granted plaintiff leave to file an amended complaint and to maintain a class action on behalf of all $1000 and $1500 bondholders. Subsequently, on January 27, 1986, the originally scheduled trial date, Zika appeared in court and advised Judge Ciolino that he had discharged trial counsel orally on December 18, 1985, and confirmed the discharge by a letter trial counsel admitted receiving on January 1, 1986. The letter identified trial counsel's "persistent efforts to convert his complaint into a class action suit" as one ground for the discharge.
Thereafter, on March 3, 1986, counsel for defendant and trial counsel, who represented himself as "attorney for the proposed class," appeared before Judge Ciolino. At that time, the Judge ordered the class certification vacated ab initio. In doing so, he cited the Rule of Professional Conduct 1.16(a) requiring a lawyer to withdraw from representation if the client discharges him. Judge Ciolino characterized trial counsel's action as offensive. At the hearing, trial counsel repeatedly asserted that he should be permitted to continue the class action despite Zika's discharge of him.
On August 4, 1986, trial counsel filed the amended complaint in this action, venued in Morris County. Almost identical in content to the proposed amended complaint in the Zika proceeding, *623 it alleged, in Count I, the sale of the $1000 and $1500 bonds and sought $1,080,000 in damages on behalf of all bond owners.
Thereafter, trial counsel, on behalf of plaintiff, filed a motion seeking class certification. Trial counsel's affidavit in support of the motion made no reference to the Zika proceedings. Counsel for defendant, by affidavit, provided the trial judge with information on the Zika matter.
The trial judge, relying upon R. 4:32-1(a)(4), and after noting trial counsel's conduct in the Zika matter, concluded trial counsel would be "unlikely to adequately represent the individuals within the class as evidenced by his failure to abide by" Rule of Professional Conduct 1.2(a) (abiding by client's decisions concerning the objectives of representation).
After the trial judge denied the class certification application and granted defendant's motion to dismiss Counts Two through Five of the complaint, the parties settled plaintiff's claim under Count One. The settlement, embodied in a consent order, required plaintiff to sign over her bond to defendant Great Gorge in exchange for $2727.25 (all principal and interest due on the bond) plus per diem interest to date of payment. In the order, plaintiff reserved her rights to appeal any prior court orders.

I.
There are four prerequisites which an action must satisfy before it can be certified as a class action: numerosity, commonality, typicality and adequate representation. R. 4:32-1(a)(1), (2), (3) and (4); In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 424-425 (1983). These prerequisites are identical to those required by R. 23(a) and (b) of the Federal Rules of Civil Procedure.
Our concern here is only with adequate representation. The rule requires representative parties to protect fairly and adequately the interests of the class. R. 4:32-1(a)(4). In determining whether such representation will exist, our inquiry is *624 directed to both the adequacy of the representative and the adequacy of her counsel. 3B Moore's Federal Practice, ¶ 23.07[1] at 23-187 (1987). After review of the record, we conclude that plaintiff and her trial counsel,[3] given the totality of the circumstances, would not provide the requisite adequate representation.
The traditional approach for evaluating adequacy of the representative is to determine whether that person's interest is co-extensive with that of the members of the class and whether antagonistic interests are absent.[4] 3B Moore's Federal Practice, supra, ¶ 23.07[1] at 23-188. Here, the settlement gave plaintiff full satisfaction of her bond claim. That full satisfaction not only changed the co-extensiveness of interest but fostered a potential antagonism if Great Gorge's alleged inadequate financial situation becomes a reality in that the settlement provided her personal financial interests with priority to those of the other bondholders. See Quirke v. St. Louis-San Francisco Railway Company, 277 F.2d 705, 708 (8 Cir.1960), cert. denied 363 U.S. 845, 80 S.Ct. 1615, 4 L.Ed.2d 1728, rehearing den. 364 U.S. 855, 81 S.Ct. 35, 5 L.Ed.2d 80 (1960). The settlement amounted to a divergence in the claims. It focused plaintiff's concern on Counts Two through Five to the extent they survive this appeal, while a predominant concern of the other class members remains with Count One. Thus, one simple example of lack of co-extensiveness and potential for antagonism is if defendant Great Gorge offers to settle by paying all or significant amounts due on the bonds in exchange for dismissal of the remaining counts. It is difficult to perceive *625 in such circumstances that plaintiff would champion other class member interests to the exclusion of her interests.[5]
The traditional approach for evaluating counsel's potential for representing the interests of undesignated class members is best done on a retrospective assessment of performance. See 3B Moore's Federal Practice, supra, ¶ 23.07[1.-1] at 23-194. A retrospective assessment here suggests counsel had an overwhelming zeal to represent the class as opposed to the named plaintiff's interest in the Zika case. While such conduct would not necessarily prevent counsel from adequately representing the class, it engenders significant doubt. Judge Ciolino characterized the conduct as offensive. That offensiveness, the trial judge here indicated, had a pervasive carryover effect. Such an overwhelming zeal also suggests, at least, the appearance of motivation for a large fee. While that motivation is not always a negative factor in evaluating counsel representation, it can be a source of potential abuse, In re Cadillac V8-6-4 Class Action, supra, at 424, by placing the interest of the class above the interest of the class representative. Furthermore, since representation must be dominated by his devotion to the primary client, counsel's ability to represent the class is burdened by the yoke of the primary client's loss of her co-extensive interest and her potential antagonism.
Defendant argues it is inappropriate to consider trial counsel's conduct as a disqualifying factor on the issue of representation because it has the effect of punishing the innocent members of the class. The argument overlooks potential for harm to the class members evidenced by that conduct. Our concern is of an equitable nature. Governed by such concern, trial counsel's conduct here, in concert with the other facts, *626 projects an adverse effect on the interests of the non-participating class members.
In sum, plaintiff does not possess the co-extensiveness of interest and freedom from antagonism required to adequately protect the interest of all the unnamed bondholders. When those conditions are combined with the apparently conflicting professional fealty involved, we conclude the trial judge properly denied plaintiff's class certification application. In so holding, we are mindful of the relevant considerations favoring class actions, In re Cadillac V8-6-4 Class Action, supra, at 435-436, and the available alternative of selecting another class representative in lieu of dismissing the complaint.[6]

II.
Plaintiff also challenges the dismissal of Counts Two through Five of the complaint. The judge granted the dismissal on grounds the counts failed to state a cause of action and failed to comply with R. 4:5-8. Plaintiff argues the trial judge ignored the premise that pleadings should be indulgently read to support a cause for action. She also contends the trial judge should have given her an opportunity to amend, rather than dismiss.
R. 4:6-2 authorizes a motion to dismiss a pleading where there is a failure to state a claim upon which relief can be granted. R. 4:5-8 requires pleadings alleging fraud to particularize the wrong with dates and items to an extent practicable. In Grobart v. Society for Establishing Useful Mfrs., 2 N.J. 136, 152 (1949), the late Chief Justice Vanderbilt defined the essential character of the court rules on pleadings when he wrote "... our procedure has been made to serve the ends of substantial justice, not by abandoning stating the essentials of a cause of action ..., but by doing so in `simple, concise and *627 direct terms.'" Thus, while we read all complaints indulgently on a motion to dismiss, Spring Motors Distributors, Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29-30 (App.Div. 1983), rev'd on other grounds 98 N.J. 555 (1985), a pleading cannot be devoid of the essential elements of the cause of action.
Consequently, we agree with plaintiff's contentions as to the right to amend the second and third counts. The essential elements are not missing in Counts Two and Three, but those counts simply fail to particularize, as R. 4:5-8 requires. Under such circumstances, the trial judge should have afforded plaintiff the opportunity to comply with the dictates of the rule. See Muniz v. United Hsps. Med. Ctr. Pres. Hsp., 153 N.J. Super. 79, 81-82 (App.Div. 1977).
However, we do not agree with plaintiff's contentions as to the fourth and fifth counts. Plaintiff's racketeering allegation in the fourth count is devoid of essential elements. It refers to N.J.S.A. 2C:41-1 which designates 21 types of racketeering activity, but never refers to any pattern of racketeering which is a fundamental criterion for any remedy under N.J.S.A. 2C:41-4. Additionally, the complaint fails to distinguish whether a person or enterprise carried out the alleged activity. Such a distinction would appear essential. See Petro-Tech, Inc., v. Western Co. of North America, 824 F.2d 1349, 1358-1359 (3 Cir.1987) (construction of comparable federal RICO statute).
Plaintiff's fifth count exemplifies the need for R. 4:6-2(e). That count is an amorphous request with no foundation in law. It does not state a cause of action for which relief can be granted. Even plaintiff in her brief on appeal does not correlate the claim to any cognizable cause of action. Instead, she weakly suggests the trial judge should have allowed her to amend her pleading. We find no basis for reversal of the trial judge's dismissal of that count. Cf. Chavis v. Nickerson, 183 N.J. Super. 458 (App.Div. 1982), aff'd 93 N.J. 103 (1983).
The orders of the trial court are accordingly affirmed except as to the dismissal of Counts Two and Three which we reverse *628 and remand. Plaintiff shall have 60 days from the date of this opinion to move to amend her pleadings on those counts so as to comply with R. 4:5-8. In the event she fails to do so, the trial judge shall enter an order of dismissal of those counts.
NOTES
[1] The record on appeal did not provide a copy of the original complaint. Consequently, we have construed plaintiff's claims as being entirely set forth in the amended complaint.
[2] All reference hereafter to trial counsel indicates plaintiff's counsel during trial court proceedings. Plaintiff was represented by other counsel on appeal.
[3] Although a different attorney represented plaintiff on appeal, there is nothing in the record to suggest that trial counsel will not remain as plaintiff's trial counsel on remand.
[4] An issue not raised and therefore not addressed is whether the holder of a $1000 bond could adequately represent both $1000 and $1500 bondholders. We note, however, disparate sub-classes would require their own representatives.
[5] As to potential issues created by pre-certification settlement not required to be resolved here, see Part I Moore's Federal Practice. Rules Pamphlet, ¶ 23.12 at 237 (1986).
[6] It is apparently conceded, based on counsel's comments at oral argument, a new class action would not be time barred in any way.