**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2568-22

BAYVIEW CORPORATE
CENTER, LLC,

     Plaintiff-Respondent,

v.

BAYVIEW PROPERTIES, LLC,

     Defendant-Appellant,

and

MADISON TITLE AGENCY, LLC,

     Defendant-Respondent.

_____

Submitted November 14, 2024 – Decided February 6, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2210-22.

Genova Burns LLC, attorneys for appellant (Jennifer Borek, of counsel and on the briefs; Charu Mehta, on the briefs).

Hyland Levin Shapiro LLP, attorneys for respondent Bayview Corporate Center, LLC (Megan Knowlton Balne, of counsel and on the brief; Beau C. Wilson, on the brief).

PER CURIAM

This appeal arises from defendant Bayview Properties, LLC's (defendant or buyer) failure to attend the closing on its pending purchase of a commercial building from plaintiff, Bayview Corporate Center, LLC (plaintiff or seller). Plaintiff filed suit against defendant and Madison Title Agency, LLC (Madison Title),[1] to retain defendant's deposit, alleging breach of contract and breach of the covenant of good faith and fair dealing. Defendant counterclaimed for breach of contract and fraud. Defendant challenges the trial court's (1) February 17, 2023 order granting plaintiff summary judgment on its breach of contract claim and dismissing defendant's counterclaims with prejudice and (2) March 17, 2023 order denying reconsideration of those decisions. Upon careful review of the record and applicable legal principles, we vacate the order of summary judgment and the dismissal of defendant's counterclaims with prejudice and remand to permit defendant to amend its counterclaims and for the parties to conduct additional discovery in accordance with this opinion.

---

[1] Madison Title did not participate in the appeal.

I.

A.  The Contract and Closing

On June 2, 2022, defendant entered into an agreement (the contract) to purchase from plaintiff a multi-tenant commercial office complex with existing tenants, located in Toms River (the property).  The contract listed the agreed-upon purchase price of $21,500,000, calculated based on a capitalization rate of 7% and a net operating income (NOI) generated from the property in the amount of $1,505,000.  Several provisions of the contract hold particular relevance to the parties' dispute.

Significantly, the contract provided a capped adjustment in purchase price should the NOI fall short of the 7% capitalization rate at closing:

> If at the time of Closing, the NOI does not satisfy the seven percent . . . capitalization rate, then the Seller shall deliver a credit to Buyer (or a reduction in Purchase Price) at Closing in the amount necessary to achieve the seven percent . . . capitalization rate, which credit or reduction shall in no event exceed Five Hundred Thousand and 00/100 Dollars ($500,000.00). Notwithstanding anything to the contrary, in no event shall the Purchase Price be below Twenty-One Million and 00/100 Dollars ($21,000,000.00).

The contract contained a "time of the essence" clause stating, "[t]ime shall be deemed of the essence with respect to all matters set forth in" the contract.

The contract provided defendant access to documents in plaintiff's possession pertinent to the property's current and prior rental revenue "within three . . . business days of the Effective Date (unless previously provided to Buyer)." As defined in Section 5 of the contract, this information included the following:

> a. a copy of the tax bill for the preceding year for the Property;
>
> b. a copy of the title report for the Property and survey(s) relating to the Property to the extent in the possession of Seller;
>
> c. copies of all Leases, any leasing commission agreements, existing Property reports, equipment specifications, drawings, or plans in the possession of Seller, and including, without limitation, any environmental, structural, mechanical, and/or utility reports;
>
> d. all Service Contracts (as defined herein) for the Property; and
>
> e. rent roll and operational financial information for the preceding three . . . years for the Property, to the extent such documentation is used or maintained by Seller in the ordinary course of its business.

Plaintiff attached "rent rolls" to the contract. The contract terms did not place time constraints on any requests by defendant for these documents.

4

Plaintiff was also to use "commercially reasonable efforts" to deliver to defendant prior to closing an "[e]stoppel [c]ertificate" from each existing tenant in the building. Section 3(e) further stated "[i]f Seller is unable to obtain the [e]stoppel [c]ertificates as required herein, Buyer agrees to accept an estoppel from Seller in the alternative . . . [and] Seller's failure to obtain Estoppel Certificates, following use of commercially reasonable efforts, shall not be a default under this Agreement."

A disclaimer to Section 5 followed with language confirming defendant's understanding that some documents might not have been prepared by plaintiff and, as such, plaintiff "ma[de] no representation or warranty whatsoever, express or implied, as to the completeness, content or accuracy of the delivered materials that were not prepared by Seller."

Section 6 of the contract addressed "Representations and Warranties" made by plaintiff "[i]n order to induce Buyer to enter into" the contract. This included an affirmative statement that "[t]o Seller's actual knowledge, as of the Effective Date, the Rent Roll is true and correct in all material aspects."

The contract specifically addressed defendant's right to physical inspection of the property and allowed for an "Inspection Period" after which

5

defendant waived the right to terminate the contract.  That provision stated in pertinent part:

> [C]ommencing on the Effective Date and expiring thirty . . . days thereafter (such date is herein referred to as the "Inspection Period Expiration Date"), Buyer, at Buyer's expense, shall have the right to have performed all non-invasive inspections, measurements, surveys, engineering and environmental studies, utilities investigations, zoning and architectural studies, title investigations and such other reports, tests and investigations that Buyer deems appropriate. . . .   In the event Buyer fails to terminate this Agreement on or before the Inspection Period Expiration Date as aforesaid, Buyer shall have waived such right of termination, the Deposit shall be deemed non-refundable, and Buyer shall proceed to Closing.

On June 8, 2022, defendant objected to title, and as a result, the parties entered into the "[f]irst [a]mendment" to the contract on July 1, 2022, extending the inspection period until July 11.  The amendment provided defendant "the right, at its option, for any reason or no reason, to terminate [the contract], on or before July 11, 2022," and that "upon such termination, the Deposit shall be immediately refunded to the Buyer."  On July 11, 2022, defendant sent notice to plaintiff terminating the contract.

On July 29, 2022, the parties entered into a second amendment, entitled "Reinstatement and Amendment to Agreement of Sale."  The parties agreed to reinstate the contract with certain modified terms and conditions, and defendant

rescinded the termination notice sent on July 11, 2022. Defendant deposited $500,000 into an escrow account, to be held by Madison Title. Defendant acknowledged that because the inspection period had expired, the $500,000 deposit was non-refundable and subject only to Section 20(a) of the original contract.

Specifically, the amended contract retained the original provision in Section 20(a) regarding "defaults" and "remedies," stating:

> In the event Seller fails to perform any of the covenants and/or agreements contained in this Agreement which are to be performed by . . . Seller, on or before the date set forth in this Agreement for the performance thereof, Buyer may either: (i) terminate this Agreement, in whole and not part, by giving written notice of such termination to Seller and Seller shall immediately thereafter return the Deposit; or (ii) Buyer may pursue the equitable remedy of specific performance.
>
> [(Emphasis added).]

That section further provided:

> In the event Buyer fails to perform any of the covenants and/or agreements contained in this Agreement, which are to be performed by Buyer, on or before the dates set forth in this Agreement for the performance thereof, Seller shall be entitled to recover the Deposit as liquidated damages as its sole remedy, and thereupon the parties shall have no further liability to each other hereunder, except for those obligations which specifically survive the termination of this Agreement.

The prevailing party in any litigation shall be entitled to recover reasonable attorneys' fees and costs.

The contract designated the liquidated damages were the sole remedy should the property not close for reasons other than plaintiff's default stating, "Seller and Buyer agree that if the purchase and sale contemplated in this Agreement is not consummated for any reason other than Seller's default under this Agreement, Seller shall be entitled to retain the Deposit as liquidated damages." (Emphasis added).

The contract memorialized defendant's acknowledgment that it was "relying solely on its own expertise and that of buyer's consultants in purchasing the property," subject only to the "specific[] exclu[sion of] any material and/or intentional misrepresentations of [s]eller." (Emphasis added). By later language, the contract preserved "all [defendant's] rights to pursue any and all available remedies at law and/or equity," for "any material and/or intentional misrepresentations" by plaintiff, as long as defendant instituted suit within six months of closing. That clause further stated that "the maximum amount of any liability shall not exceed more than three . . . percent of the purchase price."

The closing was required to occur either on or before sixty days after the effective date of the reinstatement, making the closing date September 27, 2022.

8

At some point after the reinstatement and apparently close in time to closing, it appears defendant requested an extension of the closing date and raised with plaintiff its concern that the facts and information plaintiff represented as to the property's rent roll, occupancy rate, and NOI were materially inaccurate. As reflected in subsequent correspondence to plaintiff's counsel from counsel for one of defendant's investors several days before the closing, "[s]eller made a proposal as to what they would require for the granting of such extension," to which neither defendant nor its investor would agree. The letter summarized the impasse and again requested an extension of the closing date:

> The purchase of the Corporate Center was based on an 80% occupied building at a 7% capitalization rate. After execution of the reinstatement agreement, [defendant] worked in good faith with more than one lender to obtain financing for the purchase. Upon visiting the center with the prospective lenders, the building . . . looked like only about 30% of the units were occupied and the occupied units themselves were barely operational. Needless to say, this scared off our lenders.

The email further indicated that defendant was "working with a new lender" and wished to continue to "work with seller in good faith," but asked for plaintiff's reciprocal good faith effort to resolve the issues. Specifically, the email requested an extension of ninety days or alternatively at least "a short two-

9

week extension . . . to re[]calibrate." Plaintiff responded the same day, denying the request and taking the position that it had "no obligation to renegotiate this deal again," as "[t]here [wa]s no occupancy or financing contingency in the agreement."

Defendant accordingly failed to appear at closing on September 27, 2022, and plaintiff issued both defendant and Madison Title a notice of default. Two days after the scheduled closing, counsel on behalf of defendant sent correspondence rejecting plaintiff's notice of defendant's default, asserting plaintiff's "rent roll" and "leases" provided to defendant raised "reason to believe that a material misrepresentation may have been made" necessitating further investigation. Defendant advised, however, that it "remain[ed] committed to completing th[e] transaction."

Plaintiff then filed suit to collect the $500,000 deposit. Plaintiff also relisted the property roughly three weeks after the failed closing at a purchase price that was $500,000 less than the price previously negotiated with defendant, and the listing represented the NOI to be considerably less than that represented in the contract with defendant.

B. The Complaint, Counterclaims, and Motion

Plaintiff filed its initial complaint in October 2022, alleging defendant breached the contract by failing to close on the property as scheduled. Plaintiff sought the release of the $500,000 deposit held in escrow by Madison Title as liquidated damages. Counts one and two alleged breach of contract and breach of the covenant of good faith and fair dealing, respectively, against defendant only, and count three sought declaratory judgment requiring Madison Title to release the $500,000 deposit to plaintiff.

In November 2022, defendant filed its answer with counterclaims asserting breach of contract and fraud as both affirmative defenses and counterclaims. Defendant alleged breach of the contract and fraud as a result of plaintiff's alleged misrepresentations regarding rental occupancy and income for the property and plaintiff's refusal to adjust the purchase price accordingly prior to closing.

According to defendant's pleading, plaintiff "[a]nnexed to the [c]ontract . . . a rent roll, which if accurate, would have resulted in the Property meeting the NOI [r]equirement." Defendant cited the apparent occupancy discrepancy as well as the new real estate listing for the property, which reduced the purchase price and listed the NOI as $1,187,017, appreciably lower than that

previously represented by plaintiff to defendant. Defendant alleged plaintiff breached by falsely representing the rental income and refusing to adjust the purchase price after such misrepresentation, and sought specific performance as a remedy, in accordance with the contract, or alternatively damages for the breach. Similarly, it sought damages for fraud, alleging it relied to its detriment on plaintiff falsely representing the NOI and occupancy of the property, knowing that information was false.

Plaintiff subsequently filed a motion to dismiss defendant's counterclaims for failure to state a claim and for summary judgment on its own affirmative claims. After serving discovery demands on plaintiff without response, defendant cross-moved for summary judgment.

Less than two weeks later, before any discovery was exchanged, the court heard oral argument. Plaintiff asserted that because defendant had a right to physically inspect the property, it could not now argue detrimental reliance on plaintiff's initial representations. It argued that defendant had a deadline for cancelling or adjusting the purchase price under the contract based on its inspection, and, as a result, was compelled to appear at closing, and when it failed to do so, defendant breached the clear terms of the contract and triggered its exclusive remedy of forfeiting the $500,000 deposit.

Defendant opposed the motion, arguing that the law allows for its reliance on plaintiff's representations as to the property's rental income despite its own right to inspect, and alleged plaintiff misrepresented occupancy and rent rolls for the property, failed to exercise reasonable efforts to provide defendant with estoppel certificates from each tenant, and refused to adjust the purchase price as required by the contract.

Following arguments, the court rendered its oral decision granting plaintiff's motion to dismiss defendant's counterclaims with prejudice and granting plaintiff's motion for summary judgment on its own affirmative claims. The court also denied defendant's cross-motion for summary judgment, finding "plaintiff had done [nothing] that was a material breach of contract."

The court dismissed defendant's claim for fraud, with prejudice, and granted summary judgment to plaintiff on its breach of contract claim, finding that defendant, as a matter of law, could not have reasonably relied on plaintiff's representations regarding the rent roll, because defendant had the opportunity to do its own investigation and failed to do so. The court reasoned that the contract "gave [defendant] an adequate period of due diligence where [defendant] could have pursued an investigation as to the true rents and, for whatever reason, . . . didn't use whatever tools [were] available to [it] to do that. . . . [I]t

appeared that [defendant] didn't do anything." Accordingly, the court determined defendant "can't[] later on[] say, well, we got a question about the rents and, therefore, we're not showing up at closing. It's as simple as that."

The court also found that the parties "agreed to a remedy that, if, for some reason, these rents substantially deviated from the amount that [the parties] said they [we]re, that, at most, [defendant] would get a [$500,000] credit." As such, the court determined defendant's sole remedy was to "at most . . . get a [$500,000] credit."

Defendant filed a timely motion for reconsideration, which the court denied by oral decision after arguments. Defendant argued that the court: (1) incorrectly found the expiration of the physical "inspection period" limited defendant's right to seek adjustment of the purchase price or challenge plaintiff's alleged misrepresentation of the rent rolls and NOI, which was not subject to any time constraint; (2) overlooked that the contract specifically provided that plaintiff's material misrepresentation could be actionable as a breach of plaintiff's obligations under the contract; (3) erroneously interpreted the law regarding fraudulent misrepresentations in sales contracts, which allows a buyer to rely entirely upon a seller's representation despite its own right of inspection; (4) failed to consider that plaintiff did not show it expended "reasonable

commercial efforts" to obtain estoppel certificates that would have revealed the inaccuracy of the rent rolls as represented by plaintiff "because [it] misrepresented the rent" rolls; and (5) incorrectly found that defendant's only remedy for material misrepresentation was the adjustment in purchase price.

The court denied reconsideration, again finding that defendant did not exercise "due diligence" to test plaintiff's rental income representations and its only "remedy was to go [to the closing] and demand a [$500,000] credit."

This appeal followed.

## II.

Defendant argues the trial court erred in granting summary judgment in favor of plaintiff and dismissing its counterclaims with prejudice. Regarding its defenses and counterclaims, defendant asserts plaintiff breached the contract by making false representations and refusing to renegotiate or adjust the purchase price when confronted with these inaccuracies.

As to its claims of fraud, defendant asserts that it reasonably relied to its detriment on plaintiff's material misrepresentations regarding the rent roll and building occupancy and contends it was improperly deprived of the chance to amend its claim to address any deficiency.

A-2568-22

Although acknowledging that the contract permitted physical inspection of the property, defendant contends the contract's inspection clause contemplated only physical inspection of the property, and this provision did not apply to or limit its right to challenge misrepresentations by plaintiff regarding rental occupancy and income or seek adjustment of the purchase price on that basis. It further argues that it relied on plaintiff's representations about the NOI generated from the commercial property in entering and renegotiating the contract. Defendant contends the court erroneously interpreted the applicable law to relegate defendant to conducting its own inspection or risk waiving any claim of fraud. Because defendant asserts it can sustain a viable claim of fraud, it contends it should have been granted an opportunity to amend.[2]

Defendant challenges the grant of summary judgment to plaintiff, arguing that material factual issues existed regarding whether plaintiff breached the contract first by its materially misrepresenting the NOI, thereby inflating the purchase price, failing to conduct reasonable efforts to produce estoppel

---

[2] For the first time on appeal, defendant argues that plaintiff committed a consumer fraud violation under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -227; however, defendant did not raise this issue in its answer or counterclaim or argue this issue before the trial court. Consequently, we do not consider this argument. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (citing Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

16

certificates in order to conceal the misrepresentation, and thereafter, when confronted with discrepancies in these values, refusing to postpone the closing or adjust the purchase price as required by the contract. Defendant further contends that summary judgment was prematurely granted and should have awaited exchange of discovery. Defendant argues that because plaintiff did not sufficiently establish defendant's breach of contract, it similarly failed to satisfy the burden for summary judgment on the breach of implied covenant of good faith and fair dealing claim.[3]

As to the grant of summary judgment, plaintiff counters that the clear and unambiguous language of the contract required all parties to close on September 27, 2022, and defendant's failure to attend the closing materially breached the agreement, thereby entitling plaintiff to the deposit.

Plaintiff, citing to Byrne v. Weichert Realtors, 290 N.J. Super. 126, 137 (App. Div. 1996), and similar caselaw, contends that the fraud claim was properly dismissed with prejudice, as defendant is unable to show, as a matter of law, reasonable reliance to establish fraud because "there cannot be fraud in a contract action when a party has been provided with an opportunity to perform

---

[3] We note that the motion court failed to specifically address summary judgment regarding count two or count three of plaintiff's complaint.

an independent inspection pursuant to due diligence." Plaintiff also cites the plain language of the agreement acknowledging defendant had the opportunity to perform its own inspection.

III.

A.

We first address the court's dismissal of defendant's counterclaim of fraud with prejudice. We review de novo a trial court's determination of a motion to dismiss for failure to state a claim under Rule 4:6-2(e). See Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017). We review a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to reconsider new information." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2022).

With respect to a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin v. P.C.

Richard & Son, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)). A pleading is deemed adequate when "a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

Even when an initial pleading falls short of stating a claim, Rule 4:6-2(e) dismissals "are ordinarily without prejudice." Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022) (citing Printing Mart-Morristown, 116 N.J. at 772; Pressler & Verniero, Current N.J. Court Rules, cmt. 4.1.1 on R. 4:6-2(e) (2020)). However, "a dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' or if 'discovery will not give rise to such a claim.'" Ibid. (first quoting Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987); and then quoting Dimitrakopoulos, 237 N.J. at 107).

Defendant does not contest the insufficiency of his fraud pleading under Rule 4:5-8(a) (setting forth particularity requirements for pleading fraud), so we need not address the infirmity. Defendant instead asserts that the court erred in dismissing the claim with prejudice without affording it the opportunity to amend its counterclaim, as the court incorrectly applied the law to conclude that

defendant could never, as a matter of law on these facts, establish reasonable reliance.

We agree that, if properly pled with sufficient particularity, the law permits a claim of reasonable reliance on a seller's representations even when a buyer is given an opportunity to inspect. Consequently, we determine defendant should have been permitted time to amend. See Rebish v. Great Gorge, 224 N.J. Super. 619, 627 (App. Div. 1988) (recognizing preference to allow amendment when the complaint contains the essential elements of a claim but fails to particularize as required by Rule 4:5-8).

"The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citing Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624-25 (1981)).

The law regarding the reasonable reliance element of a fraud claim is clear—"the buyer of a business is entitled to rely on the seller's statement concerning [the business's] . . . income." Walid v. Yolanda for Irene Couture, Inc., 425 N.J. Super. 171, 180 (App. Div. 2012) (alteration in original) (quoting

Trautwein v. Bozzo, 35 N.J. Super. 270, 278 (Ch. Div. 1955), aff'd o.b., 39 N.J. Super. 267 (App. Div. 1956)).  However, "where the buyer undertakes an independent investigation and relies upon that, rather than the seller's statements, there is no reliance as a matter of law."  Ibid.  Therefore, "if the buyer knows before executing the agreement of purchase and sale[] that the seller has misrepresented to him the income of the subject matter of the sale, the buyer is not deceived and may not . . . recover for fraud."  Ibid. (quoting Trautwein, 35 N.J. Super. at 278).

This well-settled caselaw does not impose on buyers a duty to inspect, but instead allows for reliance on a seller's representations.  It is only when a buyer undertakes inspection, learns of potential misrepresentation by the seller, and nevertheless proceeds in reliance on the seller's false information, that the buyer waives a future claim of reasonable reliance.

Here, neither party alleges that defendant knew or had reason to suspect that the rent roll provided by plaintiff was incorrect at the time of the contract's inception or prior to its renegotiation.  To the contrary, defendant represents it detected and promptly raised the issue on the eve of closing; and neither party claims that defendant conducted its own inspection prior to that time, uncovered the inflated rent roll, and nevertheless relied on plaintiff's misrepresented NOI.

Indeed, the trial court found defendant failed to so inspect, deeming that a waiver of any claim of fraud for lack of "due diligence." Defendant contends it raised the misrepresentation upon discovery and requested an extension of the closing date to further investigate or seek an adjustment of the purchase price under the contract, and plaintiff denied both requests.

Thus, the court's conclusion that defendant was precluded from ever raising a fraud claim as a matter of law because defendant could never show it reasonably relied on plaintiff's representations unduly restricts the bounds of reasonable reliance. The buyer's mere failure to inspect does not in all instances thwart a fraud claim or immunize a seller's false representations. Additionally, whether the lapse of the "inspection period" truly pertained to defendant's ability to challenge the misrepresentation of rent rolls and NOI remains an open question, as the court failed to address defendant's claims that challenges to the rent rolls had no such time constraint, and plaintiff's intentional or material misrepresentations remained actionable as they were deliberately excluded from any such temporal limitation.

Our courts consistently recognize the customary practice—even when a trial court determines a plaintiff has failed to plead fraud with sufficient specificity—to permit the plaintiff "the opportunity to comply with the dictates

22

of the rule," rather than deny amendment of the complaint. Rebish, 224 N.J. Super. at 627; see also Smith v. SBC Commc'ns., Inc., 178 N.J. 265, 282 (2004) (noting that "ordinarily" a dismissal granted for failure to state a claim should be "without prejudice"). Hence, the appropriate presumptive remedy, which we direct here, would be to allow defendant to amend its counterclaim within a reasonable period of time.

B.

Similarly, we find the court erred in granting summary judgment before allowing even limited discovery as to genuinely disputed and material factual issues.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 540-41 (App. Div. 2019) (citing Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 330 (2010)), aff'd as modified, 244 N.J. 567 (2021). We must "consider[] whether 'the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Id. at 541 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)) (citing R. 4:46-2(c)).

It is well-settled that "[t]o establish a claim for breach of contract, a plaintiff must provide proof of 'a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and a breach causing the claimant to sustain[] damages.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 342 (App. Div. 2021) (omission in original) (quoting EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 345 (App. Div. 2015)). "[A] breaching party 'is liable for all of the natural and probable consequences of the breach of that contract.'" Id. at 342-43 (quoting Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., 191 N.J. 1, 13 (2007)). Further, "[w]here a party fails to declare a breach of contract[] and continues to perform under the contract after learning of the breach, it may be deemed to have acquiesced in an alteration of the terms of the contract, thereby barring its enforcement." Garden State Bldgs., L.P. v. First Fidelity Bank, N.A., 305 N.J. Super. 510, 524 (App. Div. 1997); see also Ajamian v. Schlanger, 20 N.J. Super. 246, 249 (App. Div. 1952) (holding that a party entitled to rescind a contract due to fraud must act diligently and promptly, as any material act that assumes the contract is valid may be deemed a ratification of that contract).

Exclusive "interpretation of contract language is a question of law." Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J.

24

597, 605 (2012) (citing Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011)).  Such "[p]urely legal questions . . . are . . . particularly suited for summary judgment." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (citing Selective Ins. Co. of Am., 210 N.J. at 605).  Mixed questions of law and fact, however, are not ripe for summary judgment when bona fide issues of fact exist.  See Saez v. S & S Corrugated Paper Mach. Co., 302 N.J. Super. 545, 551 (App. Div. 1997). Indeed, only when "there exists a single, unavoidable resolution of the alleged disputed issue of fact[ should] that issue . . . be considered insufficient to constitute a 'genuine' issue of material fact for the purposes of Rule 4:46-2." Brill, 142 N.J. at 540.  Summary judgment, particularly in the absence of any discovery, should be reserved for those discreet cases "when the evidence 'is so one-sided that one party must prevail as a matter of law.'"  Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)); see also Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 498 (App. Div. 2012).  At this early pre-discovery juncture, this was not such a case.

Plaintiff argues, as the trial court found, that the contract required all parties to close on September 27, 2022, and when defendant failed to attend the closing, it materially breached the agreement, thereby entitling plaintiff to the return of the deposit.  Defendant argues, quoting directly from Marioni v. 94

Broadway, Inc., 374 N.J. Super. 588, 606 (App. Div. 2005), that plaintiff could not assert a breach based on defendant's refusal to close, because plaintiff "failed to show that it was willing to perform the contract on the time of the essence closing date." Defendant further contends plaintiff breached the contract first, when it (1) misrepresented the rent rolls and occupancy to induce defendant to enter the contract, (2) failed to exercise the required reasonable commercial efforts to provide defendant with estoppel certificates that would have unmasked the erroneous rental values, and (3) refused to further negotiate or reduce the purchase price when it became apparent that the NOI was lower than that represented by plaintiff in the agreement. Defendant contends that genuine issues of material fact exist as to which party breached the contract and what obligations remained as a result.

Plaintiff correctly asserts, and the trial court properly found, that the contract provided that time was of the essence and afforded a remedy to plaintiff for defendant's breach, allowing plaintiff to retain the $500,000 deposit. Yet, the court failed to recognize material provisions of the contract limiting those damages to instances "other than [those attributable to plaintiff]'s default." More significantly, the contract expressly provided without temporal limitation that should plaintiff "fail[] to perform any of the covenants and/or

26

agreements . . . [defendant] may either:  (i) terminate this Agreement, in whole and not part, by giving written notice of such termination to Seller and Seller shall immediately thereafter return the Deposit; or (ii) Buyer may pursue the equitable remedy of specific performance."

Defendant raised material issues of fact regarding whether plaintiff's representations were intentionally and materially false as to the property's rental occupancy and income which set the purchase price, whether plaintiff used reasonable commercial efforts to provide the estoppel certificates that would have exposed any false valuation, and whether plaintiff's refusal to negotiate or adjust the purchase price as required under the contract constituted a prior material breach of the contract.  The court found that the contract provided an exclusive remedy to defendant that stipulated a credit of no more than $500,000 to the buyer if the NOI did not satisfy the stated capitalization rate "at the time of closing."  Even setting aside the contract language exempting from that remedy valuation issues arising from plaintiff's "intentional and/or material" misrepresentations, the court appeared to overlook that the liquidated damages provision required plaintiff to, at a minimum, negotiate and reduce that purchase price, which defendant alleges plaintiff refused to do prior to the closing.  As such, defendant asserted facts alleging plaintiff breached prior to the closing

27

date, creating material issues of fact and undermining the pre-discovery grant of summary judgment in plaintiff's favor.

Although it is generally inappropriate to grant summary judgment prior to the conclusion of discovery, see Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003), "[a] party opposing a motion for summary judgment on the grounds that discovery is incomplete . . . must 'demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Branch, 459 N.J. Super. at 541 (quoting Badiali, 220 N.J. at 555).

Here, defendant presented to the trial court correspondence in the days before and after the closing reflecting defendant's raising concerns regarding plaintiff's representations of the property's occupancy and income generated by the rentals. It further reflected defendant's desire to pursue a resolution and ultimately purchase the property and plaintiff's refusal to extend the closing date or negotiate the price. Defendant alleged it suspected significant vacancies in the building and referenced the property listing, in the aftermath of the missed closing date, that reflected a reduced purchase price and a significantly lower NOI than represented by plaintiff to defendant to induce defendant to enter into

the original contract.  At a minimum, defendant should have been afforded an opportunity to conduct discovery.

Because the same concerns apply to the trial court's denial of summary judgment on defendant's breach of contract counterclaim, and to its ultimate dismissal of that claim, we reinstate that claim for further discovery.  Defendant was entitled to explore through discovery its own affirmative defense and substantive claim that plaintiff breached the contract first by its own conduct.

The order granting summary judgment is reversed.  The order dismissing defendant's counterclaims with prejudice is reversed.  On remand, defendant may amend its counterclaim within thirty days of the date of this order.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

29